NEPTUNE BOWDEN, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Defense of insanity — right of jury to consider prisoner's appearance at trial.*

The plaintiff in error was tried and convicted for falsely swearing to his qualification as bail in a criminal case. Upon the trial the prisoner claimed that he was, at the time of the commission of the offense, some six months previous to the trial, insane from *delirium tremens.* The judge charged the jury that, in deciding upon his insanity, they might take into account his physique and apparent age, and consider his conduct upon the trial; there was no evidence tending to show that his physical appearance, six months after the disease, would be affected thereby. *Held,* that the charge was erroneous.

WRIT OF ERROR to the Court of General Sessions of the city and county of New York, to review the conviction and sentence of the plaintiff in error of the crime of perjury.

*Charles W. Brooke*, for the plaintiff in error.

*B. K. Phelps*, for the defendants in error.

DAVIS, P. J.:

The plaintiff in error was indicted and tried for perjury in swearing to his qualifications as bail in a criminal case. Abundant evidence was given to justify his conviction. He alleged as part of his defense that at the time of swearing to his qualifications he was so far insane from *delirium tremens* as not to be responsible for his acts.

Upon this alleged defense some evidence was given, and so much that the court submitted the question, as was its duty to the jury.

In charging upon that branch of the case the learned recorder, amongst other things, said, "I ask you, gentlemen, to look at the physique of that prisoner, and his apparent age, and consider his conduct, if you please, during this trial, and tell me whether you believe such a man was suffering, or is suffering from *delirium tremens*, or any attack of it. You have to judge from all the evidence and from the appearance of this prisoner."

After the charge was concluded the counsel for the prisoner, amongst other things, excepted as follows: "I also except to that portion of your honor's charge in which you said to the jury to regard the prisoner, his apparent age, and his demeanor during the trial, and his appearance, and say whether he had *delirium tremens*, or not, upon the occasion when he signed this bond and did not know what he was doing." To this exception the recorder said, "I did not say so; I said let that enter into your examination whether you think a man of his physical appearance, and his manner here was at the time a man so deprived of reason that he was unable to know what he was doing."

To the charge, as thus explained, the counsel for the prisoner also excepted.

It appeared that the offense was committed some six months before the trial. The effect of the charge was, therefore, that the jury might judge from his physical appearance and his manner on the trial, whether the prisoner could have been at the time of becoming bail and taking the oath, six months previous to the trial, so far

affected by *delirium tremens*, as to be so far deprived of reason that he was unable to know what he was doing."

This was submitting to the jury an inquiry altogether beyond their province. It carried them into a region of the merest speculation. It would, probably, have been impossible for the ablest expert to have said from the prisoner's physical appearance and manner at the trial, whether, or not, he had had *delirium tremens* six months previously. There was no proof that that disorder leaves any infallible mark of its existence from which jurors or any person can say six months, or any other period afterwards, that a person had been its victim, nor was there any proof of the absence or presence of any indications in the "physical appearance" of the prisoner that would show that he had had, or had not had, the *delirium tremens* at any time. The charge was, therefore, open to the criticism and objection that it left to the jury to infer from the present physical appearance of the prisoner whether he could have been *non compos mentis* from a disease which he was alleged to have had six months before, without the slightest proof that his physical appearance would have been so affected by the disease, as to disclose, or disprove the fact of its having existed at any time after the disease itself had passed away. We venture to say that no precedent can be found for such a charge, and none ought to be established.

It is quite impossible for us to say that no harm was done to the prisoner by this charge. It may have controlled the jury (as it seems to have impressed the court), in disposing of the prisoner's only possible defense against an otherwise clearly-established offense.

We are compelled, therefore, to reverse the judgment and order a new trial, under the well-established rules governing the review of criminal trials.

DANIELS, J., concurred.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Conviction reversed, and new trial ordered.